IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY ORLANDO, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 21-1431 |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                                 March 15, 2023

      This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), which denied the application of Nancy Orlando ("Orlando" or "Plaintiff") for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 9); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. 10); and Plaintiff's Reply Brief ("Pl. Reply") (Doc. 11); together with the record of the proceedings before the Administrative Law Judge ("ALJ") and the Appeals Council (hereinafter "R.") (Doc. 8). Plaintiff asks the Court to reverse the Commissioner's final administrative decision and award payment of benefits or, alternatively, to remand the matter for additional administrative

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant.

proceedings (Pl. Br. at 3, 21.)  The Commissioner seeks the entry of an order affirming the decision of the ALJ that Plaintiff was not disabled.  (Def. Br. at 1.)  For the reasons set out below, we will vacate the decision of the ALJ and remand the matter for further administrative proceedings.

I.      PROCEDURAL HISTORY

Plaintiff filed the application for DIB with which this appeal is concerned on August 4, 2015. She alleged disability due to post-concussion syndrome, intractable migraine headaches, and mild brain injury.  (R. 416.)  She dated the onset of her disability to May 12, 2015, which coincided with the effective date of her termination after she advised her employer that she could not return to full-time work due to an injury she suffered in the workplace.

The state agency denied Orlando's claim on November 6, 2015.  She requested an administrative hearing before an ALJ.  Her request was granted and she appeared before ALJ Nycole Watson on October 24, 2017.  She received an unfavorable decision dated February 27, 2018 and requested review before the Appeals Council.  Upon review, the Appeals Council identified various deficiencies in the ALJ's decision and determined that further evaluation was necessary.  Inasmuch as Plaintiff had also challenged the propriety of the ALJ's appointment under the Appointments Clause of the Constitution, the Appeals Council directed that on remand the case would be heard and decided by a different ALJ.

ALJ Jessica Marie Johnson was assigned and conducted the remand hearing on April 6, 2020, at which time it was necessary to hear cases by telephone due to the pandemic restrictions. Orlando was represented by counsel, and both she and a vocational expert ("VE") testified.  ALJ Johnson issued her own an unfavorable decision on May 6, 2020.  Plaintiff again requested review in the Appeals Council, but that body denied her request on January 21, 2021, making ALJ Johnson's decision the final determination of the Commissioner. (R. 1-6.)  Plaintiff then initiated this suit.

## II. LEGAL STANDARDS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This Court must determine whether substantial evidence supports the Commissioner's final decision that the claimant was not disabled. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The Commissioner's factual findings must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)); *Rutherford*, 399 F.3d at 552. The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. FACTUAL BACKGROUND

Orlando had worked for approximately twenty years as a tax analyst when she banged her head in a workplace accident in 2012 and suffered a concussion. She took a medical leave of absence initially and then returned to work but only in a part-time capacity, performing her previous tasks on a reduced schedule. By 2015, after two years of her part-time status, her employer required her to return to full-time status or face termination. She was terminated in May 2015. Orlando was 51 years old on her alleged disability onset date (May 12, 2015), which placed her in the category of an individual "closely approaching advanced age." When she reached her 55th birthday in 2018, she

3

entered the "advanced age" category.

As recounted by ALJ Johnson in her decision, Orlando consistently reported migraines with light sensitivity, nausea, and dizziness. (R. 20.) She did not always adhere to prescribed medication, either due to side effects or due to her perception of their ineffectiveness. (R. 20, 24-25.) She testified that when she has headaches, she cannot drive and that it hurts to blink. She described ongoing neck issues from her injury but reported that chiropractic care was helpful. (R. 24.) She estimated that she could lift 15 lbs. but not carry such a weight very far.

In reviewing her medical records, the ALJ noted the time periods in which her gait and station were described as normal, including July 2014 (R. 24), December 2015 (R. 26), and March 2016 (R. 26). While the ALJ recounted Orlando's testimony of right knee pain from arthritis (R. 24, citing Hearing Testimony), she failed to describe where this right knee arthritis was documented in the record. *See, e.g.,* R. 1325 (record of visit to Rothman Institute in February 2017); R. 1563-69 (records of visits to Rothman between December 2019 and February 2020, documenting finding of "severe" degenerative joint disease and meniscal tear in right knee from recent injury); *id.* (documenting Orlando was using cane to ambulate and could not transfer to exam table).

As the ALJ recounted in her decision, Orlando lived alone in a 3-story townhouse, where she cared for a cat. (R. 22.) The ALJ also made *three* references in her decision to Orlando "taking care of" her elderly father (R. 22), although the records that were actually cited by the ALJ did not suggest that she was physically responsible for him, staying with him, or serving as anything like a home health aide. *See* R. 1111 (reflecting Orlando's report to her neurologist in May 2017 that her mother had passed away the previous month and that she was "taking care of 91-year-old father"). Orlando was not asked any questions at the hearing about the nature of the "care" she provided to her father in the wake of her mother's death.

Orlando testified candidly about having started a chocolate business in December 2015, to which she devoted a few hours a day when she felt up to it. This involved melting blocks of bulk chocolate, pouring the chocolate into molds, and packaging the candies for special orders. She explained that she prepared the chocolates on her own schedule and that friends assisted her with packaging and transport. (R. 18.)

IV.   **DECISION UNDER REVIEW**

The issue before ALJ Johnson on remand was whether Orlando was disabled under section 216(i) and 223(d) of the Act from the alleged onset date of May 12, 2015 through May 11, 2020, the date of decision. The ALJ relied upon the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). At Step One, she found that Orlando had not engaged in substantial gainful activity since the alleged onset date of May 12, 2015.[2] (R. 17-18, Finding No. 2.) At Step Two, she found that Orlando had several medically-determinable impairments – including post-concussion syndrome and migraine headaches – that significantly limited her ability to perform basic work activities, qualifying them as "severe" impairments. (R. 18-19, Finding No. 3.) At Step Three, she concluded that these severe impairments, whether considered individually or in combination, did not satisfy the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, including specifically Listing 11.18 (traumatic brain injury), 11.02 (epilepsy, as the most analogous listing in the absence of a specific listing for headache disorder), and 12.02 (neurocognitive

---

[2] The ALJ recognized that Orlando had engaged in what qualified as work activity beginning in December 2015 and continuing thereafter. However, after applying a test set out in the Regulations, the ALJ concluded that this work did not rise to the level of substantial gainful activity. This finding is not implicated in the Request for Review.

disorders). (R. 19-22, Finding No. 4.)[3]

Having found that Orlando did not establish disability at Step Three, the ALJ then proceeded to assess Orlando's residual functional capacity ("RFC"), which reflects an individual's maximum ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. §§ 404.1520(e), 404.1545. She found:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *medium work* as defined in 20 CFR 404.1567(c) except that she must never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. The claimant can tolerate occasional exposure to noise at a very loud or loud level. She must avoid all exposure to dangerous machinery with moving, mechanical parts and unprotected heights. The claimant is limited to simple, routine, and repetitive tasks; work with only occasional, simple decision making required; and work with only occasional, routine changes in the work environment. The claimant can perform occasional video monitor work. She is limited to occupations that do not require conversing over excessive background noise.**

(R. 22, Finding No. 5 (italics added).) The ALJ then applied this finding at Step Four. She determined that Orlando could not perform past relevant work, as the requirements of her past position as an economist / tax analyst were precluded by her RFC limiting her to unskilled work. (R. 30, Finding No. 6.) The ALJ then proceeded to Step Five, at which she was to assess whether Orlando was capable of performing any other jobs that exist in significant numbers in the national

---

[3] While Plaintiff does not challenge the listings findings, she contends that the ALJ should have recognized at Step Two that obesity was also a severe impairment and should have considered the impact of that impairment on documented musculoskeletal degeneration in the cervical spine and knees.

economy considering her age (as an "individual closely approaching advanced age" as of her alleged disability onset date, and an individual of "advanced age" as of the date of decision), her education, her English language skills, and her RFC. At the hearing, the VE agreed that there were unskilled jobs at the medium exertional level – such as linen-room attendant, drier attendant, and bagger – that did not require someone to engage in any of the postural activities prohibited in the RFC and in conformity with the environmental and other restrictions that the ALJ found were imposed by Orlando's headaches and post-concussion syndrome. (R. 30-31.) Citing to this testimony, the ALJ concluded that Orlando was capable of performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R. 30-32 & Finding Nos. 10-11.)

## V.     DISCUSSION

Orlando identifies five alleged errors in the ALJ's decision that she believes warrant reversal of the Commissioner's final decision and remand of the case for payment of benefits. First, she argues that remand is required because at Step Two the ALJ should have found obesity to be among her severe impairments and because the ALJ did not address her musculoskeletal impairments "at all" in her Step Two discussion. (Pl. Br. at 7.) She contends that this omission, which she considers an error of law, resulted in the ALJ's overestimation of her residual functional capacity. (*Id.*) Second, she asserts that the RFC finding for work at the medium exertional level was not supported by substantial evidence or an adequate rationale. Third, she asserts that the ALJ rejected the opinions of treating providers for erroneous reasons. Fourth, she asserts that the ALJ's Step Five finding was deficient because the VE testimony in support of it was based on hypothetical questions that failed to properly account for the opinions of certain medical sources. Finally, Orlando challenges the Step Five finding on the grounds that the VE's testimony about the incidence in the national economy of the jobs he identified was based on faulty sources.

We begin – and ultimately end – with the second issue presented by Plaintiff, concerning the lack of support in the record for the ALJ's RFC finding regarding her physical exertional capacity, although our analysis is informed by the concerns Plaintiff raises in her first argument concerning the limited universe of impairments recognized by the ALJ to have vocational implications.

>   A.   **The ALJ's RFC finding as to Orlando's physical capacity for work at the medium exertional level was not supported by substantial evidence.**

Plaintiff argues that the Commissioner cannot defend her finding that Orlando was capable at all times of work at the medium exertional level. Plaintiff notes that the requirements for medium work involve "occasional" lifting up to 50 lbs. at a time (for up to 1/3 of a workday) and "frequent" lifting or carrying of items weighing up to 25 lbs. (for between 1/3 and 2/3 of a workday). *See also* Pl. Br. at 11 (noting that a 50-lb. weight would be a water cooler jug and that a 25-lb. weight would be equivalent to a case of 24 water bottles). Pointing to the fact that she is "a 56 year old woman who has only worked in an office setting her entire life, who suffers from obesity and arthritis of the knees and cervical disc disease," (*id.*), she argues that the conclusion that she could perform medium-level work was not rational. She also faults the ALJ's decision for failing to build "a logical bridge" between the administrative record and this finding. (*Id.* at 11-12.) She notes that if the ALJ had found her capable of either light or sedentary work, she would have "gridded out" as disabled either at her 55th birthday (if she could still do light work) or as of her alleged onset date (if she were limited to sedentary work). Defendant's response does not address this argument in any detail but contends broadly that Plaintiff's claims are without merit. Defendant adds: "In light of Plaintiff's conservative treatment and her full round [sic] of activities, including starting an artisan chocolate business during the relevant period, the ALJ amply accounted for Plaintiff's work-related limitations that were supported by the record (Tr. 88, 356)." (Def. Br. at 11.) We cannot agree.

Defendant's citations in support of her assertion that the RFC finding was amply supported were to the hearing testimony in which Plaintiff discussed her chocolate business (R. 88) and to a page of her tax return (R. 356), which was marked as an exhibit and showed the gross receipts (and net loss) from that endeavor in the 2015 tax year. Her testimony reflected that she began candy making as a hobby after she was terminated from the company where she had worked for over 20 years when it would no longer maintain her in a light duty (part-time) position. Her testimony did not suggest that this activity, or any of the other volunteer endeavors in which she was periodically engaged, involved lifting up to 50 lbs. at a time for up to 1/3 of a workday or frequent lifting or carrying of items weighing up to 25 lbs. for between 1/3 and 2/3 of a workday, which is the characteristic of work at the "medium" exertional level. To be sure, she testified at the first hearing that she ordered her bulk chocolate in 2.5 lb. containers because she could not manage the 30 lb. quantities that it also came in, and she reported that the most she lifted when she made her candies was 5 lbs. (R. 117.) She estimated at her 2020 hearing that she could lift 15 lbs. but not carry it for long. And the past work that she managed to perform on a part-time basis after her 2012 concussion injury required her to take a 15 minute break every hour, even when she only worked part time.

We fail to see where in the record there is any indication that Orlando could sustain full-time work at the medium exertional level. The ALJ refers to no opinion evidence or any other records, medical or otherwise, that would support this exertional finding. Here we also see what Plaintiff would characterize as the harmful effect of the ALJ's determination at Step Two that obesity was not a severe impairment, particularly as Orlando testified about arthritis in her knee that required her to sit more than she used to. *See* R. 63 (hearing testimony). We also can appreciate why Plaintiff takes issue with the ALJ's determination that obesity was not a severe impairment, rejecting Plaintiff's contention that she would have difficulty with prolonged walking and standing. While the ALJ's

9

decision mentioned Orlando's complaint of knee pain from arthritis (R. 24, citing hearing testimony), the ALJ did not show that this degenerative joint disease was documented in the record, both in 2017 and in 2019-20. The combination of this knee impairment and obesity would need to be reconciled with the finding of a capacity to do medium work. It was not.[4]

The other indicator to which the ALJ pointed in support of her conclusion that Orlando could carry out substantial gainful activity as set forth in her RFC finding was the chocolate candy business that she started during her alleged period of disability. At the hearings, however, Orlando testified that she engaged in this as a hobby and that she only had the stamina to engage in this activity for a few hours at a time. She also testified that she limited her work to small batches, ordering the raw material chocolate in 2.5 lb. quantities, rather than in 30-lb. orders. (R. 117.) Nothing in either her kitchen or sales activity, then, would support the ALJ's finding that she could lift and carry 25-lb. items for up to 6 hours per workday and carry 50-lb. items for up to 2 hours per workday.

We cannot agree with the Commissioner that the ALJ's finding that Orlando maintained an RFC to perform work at the medium exertional level was established in this record. Rather, we find that no "reasonable mind" would accept the evidence in this record as supporting such a conclusion.

---

[4] We note that the ALJ supported her conclusion that Orlando functioned independently with reference to her ability to drive, make chocolate treats, and "ha[ve] friends." (R. 27.) She also referred, both in her discussion of activities of daily living and in the presumptively minimal impact of obesity, that Orlando reported to her doctor that she was "taking care of her ninety-one-year-old father (18F at 5)." (R. 28. *See also* R. 19.) But there is no suggestion that any "care" she provided to her father involved being on her feet for six hours at a time or lifting the weights required of work at the medium exertional level. (R. 1111, note of 5/11/2017). No other notes concerning services provided to her father are identified by the ALJ nor apparent to us in the record.

*See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Therefore, we vacate the ALJ's decision and remand for further proceedings.

## VI.     CONCLUSION

As set forth above, we cannot accept that ALJ Johnson's May 6, 2020 decision was supported by substantial evidence as it relates to Orlando's capacity for work at the medium exertional level as applied at Step Five.  No adequate explanation was found for the ALJ's finding in that regard.  At the same time, we do not see a basis in this record for an affirmative finding of disability and therefore do not take Plaintiff up on the suggestion that we make such a finding.  A separate order follows, directing the Commissioner to issue a new decision on Plaintiff's application filed on August 4, 2015.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE